# United States District Court
## for the
### Western District of New York

United States of America

v.

**G. STEVEN PIGEON**

*Defendant*

Case No. 17-mj-5188



## CRIMINAL COMPLAINT

I, Brian A. Burns, the complainant in this case, state that the following is true to the best of my knowledge and belief:

Between on or about January 31, 2014, and on or about February 25, 2014, in the Western District of New York, the defendant, G. STEVEN PIGEON, did knowingly, willfully, and unlawfully combine, conspire and agree with others, known and unknown, to make a $25,000 donation to the reelection campaign of Public Official A from a foreign national in violation of Title 18, United States Code, Section 371. Further, that G. STEVEN PIGEON solicited a contribution or donation from a foreign national in violation of Title 52, United States Code, Section 30121 and Title 18, United States Code, Section 2.

This Criminal Complaint is based on these facts:

☒ See attached affidavit.

*Complainant's signature*

BRIAN A. BURNS
Special Agent, Federal Bureau of Investigation
*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 28, 2017

*Judge's signature*

MICHAEL J. ROEMER
United States Magistrate Judge
*Printed name and title*

City and State: Buffalo, New York

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A CRIMINAL COMPLAINT

STATE OF NEW YORK  )
COUNTY OF ERIE     )   SS:
CITY OF BUFFALO    )

I, Brian A. Burns, being first duly sworn, hereby depose and state as follows:

1. I make this affidavit pursuant to Rules 3 and 4.1 of the Federal Rules of Criminal Procedure in support of an application for a criminal complaint against G. STEVEN PIGEON for violations of 52 U.S.C. § 30121, 18 U.S.C. § 371, and 18 U.S.C. § 2.

2. I am a Special Agent with the Federal Bureau of Investigation, and have been since 1998. I am currently assigned to the Buffalo Field Office White Collar Crime Squad which investigates public corruption.

3. I have been involved in the investigation of the conduct of PIGEON and others known and unknown for violations of Title 52, United States Code, Section 30121 (donation by foreign national) and Title 18, United States Code, Section 371 (conspiracy). I am familiar with the information contained in this affidavit through: (a) review of bank records; (b) review of public campaign records; (c) witness interviews; and (d) review of email records of individuals referenced within this affidavit obtained through consent and through a search warrant issued by this Court on January 30, 2017, in case no. 17-M-5133.

4. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not set forth all of my knowledge about this matter. Based on the information contained herein I submit that there is probable cause to believe that PIGEON and others known and unknown have committed violations of 52 U.S.C. § 30121 and 18 U.S.C. § 371.

## RELEVANT STATUTES

5. Title 52, United States Code, Section 30121 (formerly 2 U.S.C. § 441e), provides: "It shall be unlawful for-- (1) a foreign national, directly or indirectly, to make-- (A) a contribution or donation of money . . . or to make an express or implied promise to make a contribution or donation, in connection with a Federal, State, or local election." 52 U.S.C. § 30121. The statute also prohibits "solicit[ing], accept[ing], or receiv[ing] a contribution or donation . . . from a foreign national." *Id.*

6. Title 18, United States Code, Section 371, provides: "If two or more persons conspire . . . to commit any offense against the United States . . . and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years."

## RELEVANT PARTIES & ENTITIES

7. PIGEON is a political consultant, a former elected official, and the former Chairman of the Erie County Democratic Committee. He resides within the Western District of New York ("WDNY"). PIGEON operates in the WDNY and other areas in New York State, throughout the United States, as well as in some foreign countries, predominantly in Eastern Europe.

8. PIGEON owns several limited liability companies, including Landen Associates, LLC, PAPI Holdings, LLC, and GSDP, LLC.

9. From 2010 through 2015, one of PIGEON's clients was Company A. Company A is an online gambling company based in Montréal, Canada.

2

10. From at least 2010 to 2015, Person A was the founder and CEO of Company A. Person A is, and was at all times, a Canadian citizen. Person A is not, and has never been, a citizen or permanent legal resident of the United States.

11. From 2010 through 2015, Company A paid PIGEON's Papi Holdings, LLC, approximately $388,000 for, among other things, lobbying to legalize internet gambling.

12. In 2012, Company B was an American Corporation based in Duluth, GA, providing gaming machines, products, and technologies in the United States and Mexico. In or about September of 2012 Company A acquired Company B for approximately $170 million in U.S. dollars. In or about June of 2015 Company A sold Company B for approximately $476 million in Canadian dollars.

13. In January 2014, Person B was hired by Person A as Executive Vice President of Corporate Development and General Counsel for Company A. Person B is a Canadian citizen but resides in Florida and was, at all times relevant, a permanent legal resident of the United States.

14. In 2014, Public Official A was running for reelection to a state office.

## PROBABLE CAUSE

15. In early 2014 PIGEON, Person A and Person B orchestrated a $25,000 donation from Person A—a foreign national—to the reelection campaign for Public Official A.

16. On January 31, 2014, the finance director and the managing director for Public Official A's reelection campaign sent multiple emails to PIGEON regarding an invitation to "Dinner & Conversation with [Public Official A]." The event was scheduled for February 26, 2014. One of the emails provided that "[s]eats are $25 k per couple."

17. Later the same day, PIGEON forwarded the "$25 k per couple" email to Person A.

18. The following day, February 1, 2014, Person A responded to PIGEON:

*Put me down for a couple.*

19. PIGEON then emailed the finance director and the managing director of the campaign and stated:

*Please put me down for. 25 . . .*

*The 25 is. different client From Montreal but has American company in Long Island[.]*

20. On February 11, 2014, PIGEON again emailed the finance director regarding the event:

PIGEON:

*Need wiring info*

The finance director responded:

*Thanks Steve – here is the info*

PIGEON forwarded the email to Person A and stated:

*[Person A] here is wiring info*
*Please let me know when it goes out*
*Event two weeks from tomorrow 26th of this month*

21. The next day, on February 12, 2014, Person A forwarded the email regarding the wire to two individuals at Company A and wrote:

*pls see email below and make sure it is in my calendar to be in NYC. As well Danny, I will be making a donation ;) of 25k USD.*

22. On February 13, 2014, the managing director of the reelection campaign for Public Official A emailed PIGEON and asked:

*Did you get the wire from [Company A]?*

PIGEON responded:

*Yes they got the info*

23. PIGEON then forwarded the original email from the managing director asking whether PIGEON "g[o]t the wire from [Company A]" to Person A and stated:

> Let me know when u do it

Person A responded to PIGEON and a third party:

> Danny, pls send a copy of the wire conf of 25k usd to Steve.

PIGEON responded:

> The money should not go to me
> It needs to be wired to [Person A's] campaign
> Let's discuss

Person A responded:

> It is. It is being sent to the wire info you sent for the campaign

24. During the email exchange with Person A, PIGEON received an email from the managing director of the campaign stating:

> They wired from a corp so we cannot accept it Needs to be an llc[.]

25. PIGEON then emailed Person A and stated:

> Oh. Just sent u the email Can't be corporate must be LLC Or personal under state law  I told him I would get hold of u[.]

26. The following day, February 14, 2014, Person A emailed PIGEON stating:

> Steve, I sent the wire personally this time.

27. Later the same day, the managing director of the campaign emailed PIGEON stating:

> We got a wire from [Person A]  Is he an American citizen?

PIGEON responded:

> No.  They do have a guy at [Company B] who is perm resident and donates yearly  Based in Atlanta

5

28. Continuing on February 14, 2014, PIGEON addressed the citizenship requirement with Person A via email:

> PIGEON wrote:
>
> *Needs to be American citizen or American partnership or LLC*
>
> Person A responded:
>
> *Wow! So now I've wired twice and it will be returned? Ok*
>
> PIGEON responded:
>
> *Sorry should have told u Thought u knew must be citizen to give.*

29. That same day, February 14, 2014, Person A forwarded the invitation to the campaign event for Public Official A to Person B and stated:

> *Lets discuss I need to you to send 25usd J[.]*
>
> Person B responded:
>
> *Ofcourse. Need me to attend?*

30. One week later, on February 21, 2014, Person A emailed Person B again regarding the donation.

> Person A wrote:
>
> *[Person B] pls wire 25k as contribution to [Public Official A]'s campaign.*
>
> Person B responded:
>
> *Will do. Do you have the wire instructions?*
>
> Person A replied and included a third party:
>
> *I thought I sent it before. Danny pls ask Sam to send it to [Person B]*

31. On February 23, 2014, Person A again emailed Person B regarding the campaign donation:

> *Did u wire the 25k?*

32. On February 24, 2014, Person B emailed Person A and wrote:

> *I sent the wire for $25k this morning.*

Person A forwarded the email to PIGEON and wrote:

> *Fyi on below.*

33. That same day, Person B requested reimbursement from Company A for the donation by submitting the wire record for the $25,000.

34. Official campaign filings with the New York State Board of Elections reflect that Person B made a $25,000 contribution to the campaign of Public Official A on February 25, 2014.

35. On February 25, 2014, the managing director for the campaign emailed PIGEON and stated:

> *Thank you for your RSVP for tomorrow's dinner. We are looking forward to a great event. . . .*

36. PIGEON forwarded the email to his business partner, who forwarded the email to Person A.

37. On February 28, 2014, after consulting with a lawyer, Person B directed individuals at Company A not to process his request for reimbursement for the $25,000 donation. Person B followed up with an email in which he stated:

> *Guys, As discussed, please do not process a reimbursement for the $25k contribution I personally made to the [Public Official A] campaign.*

38. During an interview on April 5, 2017, given pursuant to a proffer agreement, Person B admitted that he sent the email referenced above only after making the donation fully expecting

7

to be reimbursed, and only because he had consulted with an attorney based on his uneasiness with the entire transaction. Person B also confirmed that he made the donation because Person A asked him to do so.

39. Based on the investigation to date, I submit that there is probable cause to believe that PIGEON, along with Persons A and B, and possibly others, conspired to make a $25,000 donation to the reelection campaign of Public Official A from a foreign national in violation of Title 18, United States Code, Section 371. I further submit that there is probable cause to believe that PIGEON "solicit[ed] a contribution or donation . . . from a foreign national," in violation of Title 52, United States Code, Section 30121 and aided and abetted such solicitation and the donation itself in violation of Title 52, United States Code, Section 30121 and Title 18, United States Code, Section 2.

## CONCLUSION

40. Based on the forgoing, I request that the Court issue the proposed criminal complaint.

                                                                                     BRIAN A. BURNS
                                                                                     Special Agent
                                                                                     Federal Bureau of Investigation

Sworn to before me this 28th day of April, 2017.

MICHAEL J. ROEMER
United States Magistrate Judge

8